Good morning, your honors. May it please the court, Julie Murray for Appellant Jeffrey Brill. Under this court's decision in Hinson, the question whether a credit reporting agency has conducted a reasonable reinvestigation of an item of information disputed by a consumer is a question for the trier of fact. The trier of fact considers three factors. One, whether there's any evidence that the furniture of information is unreliable. Second, whether the extent of harm that a consumer would face if inaccurate information continues to be reported about the consumer. And three, the cost to the credit reporting agency of conducting a more accurate, a deeper investigation into the accuracy of the information. Why didn't your client charge identity theft? Charge identity theft in what respect, your honor? Isn't that what you're complaining about, identity theft? Yes, identity fraud. And he did in fact... Well, there are these two separate things, right? There's identity theft and there's also, what, inadequate investigation or something? You're referring to the separate part of the statute with respect to identity theft? Is that your question? There's identity What do they call it? Right, so under section 1681I, which is the provision that Mr. Brill brought his claim under, a credit reporting agency is required to do a reasonable reinvestigation of information. So he's suing for, he wants a reinvestigation as opposed to charging identity theft. Is that correct? Well, he did argue to TransUnion and to Toyota. He disputed the... Is it about reinvestigation or does it include identity theft? It is about reinvestigation and the ground for the inaccuracy is that it is based on identity theft. Well, don't you need a handwriting expert to resolve the issue of whether he signed both of these or whether they're two different people? No, your honor, and I think under Hinson, as this the question of the reasonableness of a reinvestigation is one for a trier of fact. We think that if a jury got the 2013 forged leaf in this case... Wait a second, where are the signatures? In terms of the record, they're not in the record. Sorry? Are they in our record? I haven't seen them. Are they in our record? They are not in your record. Well, I don't understand. Why can't we look at the signatures and see if they look identical or different? Certainly, your honor, I wish the signatures were in the record as well. Well, why aren't they in the record? They were not introduced into the record. However, the amended complaint... Why weren't they introduced, why weren't they put into the record? The whole case is about two signatures and whether they're one person or two people. So you think, first you look at the signatures. If they're utterly different, maybe you'll say obviously two people, but the prudent approach would be to have a handwriting expert because the same person can write differently on different occasions. Whether it's the same person or different person requires some expertise. I don't understand why that wasn't done. So, two points, your honor. I wish it had been done as well. It was not. However, the amended complaint does specifically allege that Mr. Brill, this is paragraphs 41-48, that Mr. Brill presented TransUnion both with the 2013 forged lease and exemplars of his handwriting and pointed to at least four differences between those signatures. Could I back up a little bit? Sure. Because this is really, it bothers me. Where did that come from, that document with the signatures on it? The 2013 forged lease? The one that you demonstrated was forged. That was obtained by my client, Mr. Brill, from Toyota when he attended to this meeting. Okay, now let's get back to Toyota. Because I assume somebody, it looks like there was even a lawsuit, somebody went to Toyota, presented them with what they think was a forged signature. And what did Toyota say? You're correct, your honor. My client disputed the debt both with Toyota and with TransUnion. The lawsuit against Toyota was settled under confidential terms. Yeah, this is the problem. Somebody went to some trouble to go to Toyota to get this thing and then they settled it with whatever. Is his report clean now? Is it cleared up? Going beyond the record, your honor, my understanding is that his credit report continues to contain derogatory information. The credit report after Toyota has said it was a mistake continues to have it on there? There is no evidence that Toyota has said that it was a mistake. What reason is there to think that Toyota's settlement isn't adequate? I'm sorry? What reason is there to think that Toyota's settlement isn't adequate to compensate your client? Well, your honor, as a legal matter, my client was entitled to proceed both against TransUnion and Toyota. His remedies against TransUnion... What, he was entitled to get two judgments? No, your honor. We are not arguing that he could double recover for the same... So he has this Toyota settlement. Why isn't it adequate? I think that would be a question, your honor, for discovery. If TransUnion wanted to argue that my client was attempting to double recover for the same injuries and had already been compensated, that would be a question for... What do you mean discovery? Why don't you just tell the judge how much he got from Toyota? As I said, your honor, the terms of the settlement are confidential... Oh, that doesn't matter. The judge can say, I want to see those terms. And the judge here did not say that. Yeah, well, he should have, and this case would be over long ago. This guy got his settlement. And now, because no one's thought of a handwriting expert, there isn't any way to resolve this question of signatures, and they're not even in the record. Well, your honor, if I could go to... Really mishandled. Very mishandled case. Your honor, all I can do is start from where we are today, and that is, on a motion to dismiss, we do have allegations that the signatures are different in at least four respects. Well, go and find a handwriting expert to support your allegations. Mr. Brill has never argued that a handwriting expert would be necessary to resolve this. But that's absurd, because without a handwriting expert, all you have is the fact that there are some discrepancies between the two signatures. But often people sign things differently. Sometimes they put in a middle initial, sometimes they leave it out, sometimes they scribble, sometimes they write carefully. So if you look at all a person's signatures, you'll see differences. And the question is, are these differences consistent with a single writer, or are they strongly indicative of multiple writers? Well, your honor, we think that's a question for the trier of fact. We do not think a jury looking at these signatures would say that a handwriting expert would have been required. But even setting aside the comparison... What do you mean a jury wouldn't say a handwriting expert was a... What on earth is... That's nonsense. Let me ask... You don't say to a jury, well, we could have expert witnesses and so on, but you might not... You go and make up your own mind. We're not going to bother with experts. Let me ask you this. It's the handwriting, that's one prong that you thought could be reinvestigated, but the other was actually interviewing the people at Toyota. That's correct, your honor. So there was an alternative to the handwriting situation. That's correct. And so are you saying that there are really two points that you're making? The handwriting plus... Go to that. I want to hear that. So Mr. Brill, and this is in the amended complaint, is that Mr. Brill did suggest to TransUnion that employees with Toyota Motor Company could be able to shed light on the relationship between his ex-girlfriend and Toyota and how this extension came to be. So if you look, for example, at the Penner case in the Fifth Circuit, that was an instance where you actually did have a credit reporting agency that went back and interviewed employees responsible for the alleged fraudulent charges, and even there the court said that was not sufficient. But that's what your client did. No, your honor. Somebody who went to Toyota, got a copy of this document, and went to Toyota and showed that it was a forgery, I suppose, and then Toyota did something or other and settled. My client... And what you're asking, this goes back to what's the duty of the credit agency. They went to Toyota. Toyota said, yes, it's owed money. What you're saying is the credit, whatever the name is, what is it, TransUnion? TransUnion. TransUnion should have done exactly what your client did. Go to Toyota. Go to Toyota and start doing a lot of research and get back to find out what the problem is. And in Henson, your honor, this court recognized that it's a reasonable reinvestigation stage. A credit reporting agency may need to do background research. They had to do everything your client did. Well, didn't Toyota, I mean, TransUnion actually went to Toyota, but all they asked Toyota to do was to verify the delinquency and didn't do anything else. Is that right? That's correct, through an automated verification form. And there is no evidence that the actual employees who were responsible for the lease extension were ever interviewed either by my client or by TransUnion. I know, but what we're saying is every time, if it's not good enough to go to the source of the debt, which they did, the creditor, and the creditor says that money is owed, what you're saying is they should have gone then go to Toyota, do a lot of investigation and challenging whatever else. That's a pretty big order. And every time there's a question, what you're saying to me is really trying to expand this law to put a huge burden on the credit agencies to do a whole lot of legwork and have a whole separate section to do investigations of a challenged debt. Your Honor, we are not saying that every time a consumer says, this isn't mine, that a credit agency would have to do that kind of investigation. Well, of course, case by case. Where they're presented with signatures that are different in these ways and with additional information about interviews, we do think under those circumstances the credit reporting agency should do that reinvestigation. And certainly at the motion to dismiss stage, the speculation as to burdens on TransUnion I think are inappropriate. That really is a question to answer after discovery. Well, you have the document. Somebody got that, the forged signature. That's correct. Somebody got a hold of that. I assume they got it from Toyota. That's correct, Your Honor. And what you're saying is TransUnion should have gone and done that. No, we're saying that TransUnion should have exercised its independent judgment as Hinson recognized. Just looking at it. Looking at it could have been efficient. It could have also been effective to contact Toyota employees. There is no evidence that that was done. So your bottom line is there was enough alleged in the complaint to show there was a problem, and you want to get past the complaint so you can have discovery, right? That's correct, Your Honor. If you look at the cases on which we're relying, and even, in fact, cases like Carvalho and DeAndrade. What do you want in discovery? Well, I think Mr. Brill, for example, should have an opportunity to actually determine what was asked of Toyota. What was what? What was asked by TransUnion of Toyota and what Toyota did. To the extent that, my apologies, what TransUnion did, to the extent TransUnion wants to argue about burdens, that would be its opportunity to introduce evidence and for my client to test that evidence with respect to the burden of conducting some kind of lay analysis of the handwriting samples here. So I think there are any number of issues. And that's why, if you look at the cases that are central to this appeal, all of them came up on summary judgment orders or after trial. So what is involved, $8,000? The debt that was reported as charged off was about $8,000. So is that what he wants from TransUnion? He has asserted actual damages, not the amount of the charge off, but the damages caused by TransUnion's inaccurate reporting. And it's also asserted emotional injuries that are ongoing. And how much is he asking for? The complaint does not specify a dollar figure, Your Honor. It seeks both actual damages and injunctive relief. And he's complaining about emotional harm? That's correct. Well, what's the emotional harm? The stress and humiliation of related to- It's ridiculous, honestly. What is he, a baby or something? Your Honor, it's under this court's case law, though it is a stringent standard for showing emotional injuries. This court has recognized that a plaintiff can plead injuries in that respect, and the question is what kind of evidence. We're not at that stage yet. So your point is if you get by this, then you would put on that kind of evidence so there would be evidence of what TransUnion actually did. TransUnion could explain their various policies and when they go further and when they don't. That's correct. I mean, that's what you're saying from a judgment standpoint in terms of how they acted, how they conducted themselves, that you're just saying it's too early to say that. I think that's correct. And I think if this court were to go the other way, I think that that would be inconsistent with both the structure of Henson but also what other circuits have done, namely Cushman and the Penner case. How long has this been going on? When did the alleged identity theft or whatever you want to call it, when did that happen? Well, the lease would have terminated at the end of 2012. And so the extension began at some point in time. This is with the ex-girlfriend, right? That's correct. And apparently she's not in the picture. Well, my client actually had a lawsuit against his ex-girlfriend as well and has obtained a default judgment against her. That sounds reasonable. So are you saying 2012 is when this started? That's correct. Four years for this. Ridiculous waste of resources. We disagree, Your Honor, and we think under the Do you do this litigation regularly? Your Honor, we are appellate counsel in this case, so we came on to assist with the appeal. Yes, FCRA cases we think are important in Congress thought so as well, that individuals should not have their good names smeared in credit reporting agencies by inaccuracies that furnishers and credit reporting agencies should know better. You think it wouldn't take four years to find out whether these are signatures by the same person or two different people? That seems to be the ultimate issue, right? It is, Your Honor, and certainly some of the reason that we are here. So why does it take four years to find out whether two people, whether it's one person or two people? We think had the district court judge in this case not dismissed on a motion to dismiss, this case could have been proceeding all of this time. So, you know, whatever the merits Your Honor thinks may be ultimately found in this case, the fact that it was dismissed on a motion to dismiss in light of the evidence that my client has specifically alleged is improper. Thank you. Okay, well, thank you, Ms. Murray. Mr. Brown? Good morning, and may it please the Court. My name is William Brown, and I'm here to speak on behalf of TransUnion. Taking a step back to the motion to dismiss, the argument that was made is that plaintiff did not state a cause upon which relief could be granted because what he said was TransUnion should have resolved the legal issue as to the validity of the underlying lease extension. That is not the responsibility of credit reporting agencies. That's the significance of DeAndre and Carvalho and their progeny. As noted by Henson, pleading and proof of an inaccuracy is a prerequisite to a claim under both 1681EB and 1681I of the Fair Credit Reporting Act. In this case, the plaintiff did not plead an inaccuracy in the sense of an issue that TransUnion could have resolved. Well, TransUnion could have gone to the Toyota employees who helped execute the lease, right, and get some facts on that if you didn't want to go through the expense of doing handwriting analysis. Are you saying that the plaintiff should have had the handwriting analysis done first, and that should have been a part of what was in the complaint? He needed to allege that. What I'm saying is TransUnion didn't have to go and talk to witnesses because the underlying decision would still be a legal one. This is a decision that could only have been resolved by a court. The plaintiff had his opportunity, dismissed the action against Toyota without a finding that the signature was fraudulent. So you're saying you have no obligation, TransUnion, to investigate when someone says it's a fraudulent signature? If the dispute is a purely legal one, i.e. a collateral attack on the underlying obligation, then TransUnion does not have that duty, and that was why this case was amenable to dismissal at the pleading stage. If you look at DeAndrade and Carvalho and the cases that follow them, when the credit reporting agency is faced with a legal question, is this a valid contract? That is not a question that the credit reporting agencies like TransUnion are obligated or even capable of performing. That's really the focus of my questions before. What does the law require? And it seems to me that if you do whatever the preliminary check is, they called Toyota, they contacted Toyota, whoever they contact with at Toyota said that it's a valid debt. It is current, therefore it is listed on the credit report. The thing that bothers me is that would this be an expansion of the law that imposes on every credit agency when there is a challenge credit? And this is important because obviously there are a lot of people when they get their report, they find something, hey, I don't know that or I paid that off or something like that, and that has to be cleared up. In this particular case, it looks to me where the obvious, go to Toyota, which they did, and whatever that took, however much time and however much work, I think they are saying your client should have done, and that could have been expensive. It could have taken a lot of time and effort. You almost needed a whole separate, I guess, I don't know, when a challenge comes up like this, it obviously was solved by going to Toyota and getting the information, proving it. I don't know what the old girlfriend, he filed suit against her, and that sounds appropriate, defrauded him. I just don't want to see the law expanded to something more than what is required. And I guess you're making that position. I don't know, maybe not. No, definitely, Your Honor, and that's the only reason that we're here. This case has taken on a life of its own. Appellate counsel was brought in from a public interest law firm to try to expand the law in the Seventh Circuit with respect to credit reporting agencies. The fact that Appellant's brief confuses Henson with Cushman is probably the greatest indication of what is really at stake here. It's not $8,000. It's a major change in the law that's going to significantly add to the credit reporting agency's burden. Does your point is that there is no duty under FCRA on credit reporting agencies to verify the validity of the underlying debt when conducting an investigation? Correct. It's enough that they refer the matter to the creditor? Is that the idea? Because the Act says it requires credit reporting agencies to conduct a, quote, information in a credit report when a consumer disputes the accuracy of that information. Well, it's well settled that the furnisher is in the best position to know whether or not the debt is valid. They have the opportunity to interact face-to-face because they have the only direct relationship. How TransUnion would go about replicating an entire court trial to determine whether or not the contract represents a legitimate obligation, I'm not sure how that would happen, and I think it's exactly why the law says it doesn't have to happen. Well, you're saying that credit reporting agencies should refer the matter to the creditor. Yes, they should be able to rely on... And when you say the law requires, you mean the case law rather than the statute law. Correct, Your Honor. Well, that seems to be what the focus is here, that this is whatever TransUnion did, you're saying was reasonable. Yes, sir. Because they went to the creditor. Now, there could have been somebody that was lying at the creditor or maybe there was something that was phony about it, but that doesn't appear to be the case. Whatever it is, that debt was owed. And why was it owed? Well, it's because Brill's ex cheated on him and renewed the contract with the forgery and then didn't pay on it, and then rightfully they sued her. I don't know what happened, but that's beside the point. But then Toyota recognized that there was someone there accepted a forgery, and so they owned up to it and paid off apparently or settled or did something. That's exactly correct, Your Honor. But that's what they are asking TransUnion to have gone through that same process. That's my understanding, correct. And my point is, in the first instance, even before you reach the Henson question of whether or not it was reasonable to ask the credit reporting agency to do that, TransUnion did not have a legal obligation to perform those steps because that represented a collateral attack on the underlying agreement. This distinguishes it from Henson, for example, where the only question was a scrivener's error where the judgment wasn't properly reflected on the docket. That's a fact. You can look at that and know that. The question presented here, having to do with forged signatures and the validity of the underlying contract, those are legal issues. And the way the system is set up, they get decided by a court. Now, the fact that the plaintiff chose not to avail himself of that by actually taking that to a stage where a legal determination was made with respect to the validity of the contract, including the signatures, because that's another point here, too. There could be other things that go to the validity of the contract. Let's say the plaintiff got their way and we brought in a handwriting analyst and we interviewed witnesses. We all know, as lawyers, that doesn't settle the question. There could be other problems with the underlying contract. And if you open this up and make TransUnion responsible for all of those things, what was proper consideration given? I don't know. And a credit reporting agency isn't going to be able to determine these things. Here, the plaintiff has picked off two elements of what a court is designed to accomplish and is trying to put it on the credit reporting agency. To Judge Williams's point, going out, interviewing witnesses, determining their credibility, that reeks of what a court of law does. And that's where this dispute needed to be resolved, not with the credit reporting agency. I guess you're saying going to that extent would be unreasonable. Once you got to that second step, yes. Well, that's what it says. That's what the law says. It would definitely be unreasonable once you got to that second step. And it's never reasonable to impose upon a credit reporting agency the task of determining the legal validity, enforceability of an underlying contractual agreement. Mm-hmm. Okay, thank you very much. Thank you, Your Honor. Mr. Brown. So, Ms. Murray, your time expired, but you can have another minute, too, if you'd like. Thank you, Your Honor. I just want to make two points briefly. Judge Mannion, in response to your question, if this court were to rule for Mr. Brill, it would not open TransUnion or other agencies up to doing a handwriting analysis, interviews of employees, in all cases in which a consumer says, this isn't mine. It would be limited to instances where this consumer presents documentation in support of that attestation to cast doubt on the liability. But Mr. Brown's point is that there could be all sorts of reasons, pro and con, the legality of a contract. And is the credit reporting agency supposed to do a comprehensive investigation of the contract? It's not its contract. It's supposed to do a reasonable reinvestigation. And at pages 17 and 18, because that's what the statute says, Your Honor. Why wasn't just reporting this to Toyota? Why wasn't that adequate? Then you have your claim against Toyota. Toyota. The statute does not make those exclusive, Your Honor. But why? What sense does that make? However desirable or nonsensical. Does it make any sense? Your Honor, it is what the statute says. Look, that's not answering my question. I think it does make sense. You tell me whether it makes sense. It does make sense, Your Honor, in this sense. Let's say you have in an instance where someone disputes information with both a credit reporting agency and a furnisher. And the furnisher says, Yeah, you're right. This is not accurate. But the credit reporting agency, because it is only doing things through automated means or incompetence, doesn't remove it. It is an instance that would be a prime example. That's not this case. Well, Your Honor, what we do know is that there continues to be derogatory information about my client in his current credit report from TransUnion. I think it does make sense. One other thing that I would say as to this issue of whether a credit reporting agency has to look at the legality. It will always be the case that the credit reporting agency can't cancel a debt. Or in instances where the furnisher comes back and says, Yep, that's his debt. That it can't actually resolve the issue to a legal certainty as a court of law would do. But as we show on pages 17 and 18 of our brief, there are a number of cases in other circuits in which courts have said it is not whether the credit reporting agency reports correctly what the furnisher says, but whether it reports correctly what the consumer owes. And as this court in Henson said, there is behind that in some circumstances. But why are most referring the issue to Toyota adequate? Is there any relief you couldn't get from Toyota? Your Honor, questions as to damages I think would be appropriate at a later stage of litigation. I don't understand that. It seems like the sensible thing is for them to refer the issue to Toyota, and you go to Toyota and had a settlement. It's not the end of it. But Your Honor, if that's what Congress had intended, it would have said the credit reporting agency shall refer it. Who knows what they intended and whether they say what they intend. It recognized that credit reporting agencies in passing FCRA do have a grave responsibility to ensure that the information they're putting out about Americans is accurate. But they can't go and investigate all the contracts that people have. And we're not asserting that they would need to do that in every instance, Your Honor. What's special about this? You go to Toyota, which is a big company, billions, and have a settlement with them. Why does that end it? You got a settlement. That's correct. But it's sealed. It is a confidential settlement. That's correct. And his credit record is still the same because TransUnion has not acknowledged that settlement and wiped. I don't know that they're precisely the same, Your Honor, but what I can say is it continues to report derogatory information about him. Related to this lease. Yes. Related to this lease saying that the debt was charged off. So in terms of the settlement, there was nothing that your client got from Toyota that could help him with TransUnion in terms of wiping his... I can't speak to the specific provisions. What I can say is I do not think as a general matter you can infer that because someone has an agreement with a furnisher to remove information   honor the request. Well, yeah, that's what I'm trying to get at. Yeah, that's what I'm trying to get at. The settlement did not cover that. Your Honor, I... I mean, did he tell TransUnion that he'd settled his dispute with Toyota and everybody's friends now? I don't recall the timing. Certainly, TransUnion recognizes as it did in its appellate briefs that there has been a settlement with Toyota. And they were sued separately, not together, which is another kind of bizarre thing. I believe that the TransUnion suit was initiated the same month of the settlement with Toyota. Okay. Well, the problem is the forger is the ex-girlfriend. That's correct. Who ran off with the car and didn't pay on it. I mean, geez. That's the problem. Well, it's certainly one of his problems, Your Honor. But the problem with his... The one he got rid of, it sounds to me. I'm sorry? The problem he got rid of. Unfortunately, she took the car. But the problem of his credit report remains. And the best person in a position to change that is TransUnion. Yeah, when they get the... what you all found out. Not you, but whoever the attorneys were that got the settlement. Found out that they were in some forgery. She did it. They made the mistake. And they owe for that. Whatever Toyota did. And then, it should be wiped clean now. I don't know why it isn't. But it has not been, Your Honor. And because... Why doesn't TransUnion... Why doesn't he go to... or maybe went to TransUnion and says, you know, it's all settled. And please don't continue to make derogatory statements about my credit. Would he do that? Why wouldn't that resolve it? Did he try to do that? Independent of the... what's gone on in this lawsuit? Not to my knowledge, Your Honor, but I don't know. Wouldn't it be the sensible thing to do? Right? You had a problem. Toyota turned out to be the principal evil doer. You make a settlement. You have relief against them. And then you go to TransUnion and say, you know, don't say we have a bad credit report because, you know, it was Toyota's fault. And they settled with us. They paid us. It's all over with. We're all friends. Why is that the way to resolve this? Well, Your Honor, from... I don't know the precise dates, but a settlement with Toyota occurred long after this debt was disputed both with Toyota and TransUnion. The settlement took place when? It was entered into long after this debt was disputed with TransUnion and Toyota. And, of course, the statute gives a consumer right to a quick... Why did it take a long time? Well, there was a delay in filing suit and then, of course, a delay in entering into a settlement. My point is that the statute gives a consumer... The credit reporting agency is supposed to conduct a reinvestigation within 30 days. Yeah, we get that. But what Judge Posner is talking about is sort of the practical reality. Now that there was a settlement that certainly there could have been a lift of the secrecy provision to go to TransUnion to try to get this clean so that it could be settled. Because for this amount of money and the amount of money that's been spent in this litigation, it's way out of proportion. So it would make sense. I mean, and TransUnion isn't here to answer, but it's really mystifying why they wouldn't settle. I mean, I don't know what's in the secret agreement, but certainly we could get that secret agreement and we could have avoided a lot of fees and everything else if the thing had settled. Well, certainly, Your Honor, I think that to the extent that TransUnion, I do not know what has been passed between TransUnion and my client with respect to the settlement. Certainly, going forward, I think that is a question that TransUnion could raise as to what Mr. Breaux has agreed to and whether he has gotten any kind of recovery. Well, why isn't it something you can raise? Well, if we are permitted to continue litigating this, I'm certain it will come up. But right now, we're just faced with an amended complaint. That's all we have in the record. And as the case law in this and other circuits shows, that really is an anomaly and an anomaly because it's unlawful. We would ask this court to reverse the district court's decision if the court has no further questions. Okay, well, thank you very much. Thank you, Your Honor. Ms. Murray and Mr. Brown.